[No. 12624–5–I.   Division One.   August 26, 1985.]

SEATTLE–FIRST NATIONAL BANK, *Respondent,* v. WEST COAST RUBBER, INC., ET AL, *Defendants,* HUGH W. TOWNSEND, *Appellant.*

*Hugh W. Townsend,* pro se.

*Davis, Wright, Todd, Riese & Jones* and *Douglas W. Purcell,* for respondent.

WILLIAMS, J.—Seattle–First National Bank brought this action to recover on a promissory note executed by West Coast Rubber, Inc., a general guaranty of the corporation's debts executed by John Zamelis, and a $25,000 limited guaranty of the corporation's debts executed by Hugh Townsend. Sea–First also sought attorney fees. Townsend counterclaimed for damages for breach of the limited guaranty and violation of the Consumer Protection Act, RCW 19.86, and for attorney fees. Default judgments were entered against West Coast and Zamelis. After a trial to the court, sitting without a jury, judgment was entered against Townsend in the amount of $30,613.70 ($25,000 principal plus $5,613.70 interest). Sea–First's claim for attorney fees was rejected. Townsend appeals, and Sea–First cross-appeals.

In July 1977, Sea–First issued a $100,000 letter of credit

to West Coast with an expiration date of April 18, 1978. In return, West Coast pledged a security interest in its accounts receivable and inventory and gave a second deed of trust on real property in Forks, Washington. Shareholders Sam Lincoln, his wife and John Zamelis signed general guaranties of the corporation's debts; shareholder Townsend signed a $25,000 limited guaranty of those debts. See appendix. Townsend also delivered 26 $1,000 bearer bonds to Sea–First as collateral for his guaranty.

On April 10, 1978, West Coast drew on its letter of credit by requesting Sea–First to issue a check for $56,339.19 to Seiberling Tire Company. West Coast gave a promissory note to Sea–First in that amount. On April 18, 1978, West Coast again drew on its letter of credit by requesting Sea–First to issue a check for $31,883.03 to Seiberling. West Coast gave a promissory note to Sea–First in that amount. On May 22, 1978, West Coast consolidated its debts under the letter of credit by executing a promissory note to Sea–First in the amount of $61,190.95. The final payment on this note was due on September 5, 1978.

On June 21, 1978, Townsend sent a letter to Sea–First saying in pertinent part:

> As your file and information shows and as was the intention of the parties my $25,000 guaranty to the bank was limited only to the commercial letter of credit and terms expressed in the application was the only basis of the guaranty. I am of the opinion that the obligation established at that time, namely, July 14, 1977 was fully paid, discharged and replaced in complete substitution by the promissory note accepted by the bank from West Coast Rubber Inc. on May 22, 1978 and maturing on September 5, 1978 thereby relieving me and my bonds from any further obligation also.

Defendant's exhibit 12.

In October 1978, the Lincolns, in return for a release from their guaranty, borrowed $20,000 from Sea–First on a note and second deed of trust on their house. This money was used to reduce West Coast's indebtedness. At the same time, Sea–First released its security interest in West

Coast's accounts receivable and inventory. On October 6, 1978, West Coast executed a promissory note in the amount of $44,137.04, with the final payment due on January 15, 1984. This note replaced the May 22, 1978 note of $61,190.95, reflecting payments and adjustments made during that period. West Coast defaulted, and Sea–First brought this action on February 15, 1980. By letter (see appendix), Townsend tendered $25,000, and Sea–First returned his bonds.

The first issue is whether Townsend's liability is based on West Coast's promissory note dated October 6, 1978, and his limited guaranty. Townsend contends that the note was never introduced into evidence, the trial court made no findings regarding the validity of the obligations represented by the note, it was executed after Townsend "rescinded" his limited guaranty, and it was executed after the letter of credit expired.

██ Where a guaranty does not refer to any particular note, the language of the guaranty alone determines the obligation guaranteed. *North Am. Bond & Mortgage Co. v. Twohy,* 159 Wash. 442, 447, 293 P. 717 (1930). The limited guaranty does not refer to any note, but states that Townsend "guarantee[s] payment to the Bank of all liabilities and indebtedness which the Customer [West Coast] has incurred or is under or may incur or be under to the Bank." Thus, Sea–First was required to prove only the validity of the limited guaranty and the indebtedness of West Coast to it. The evidence clearly established both of these propositions.

The second issue is whether Townsend rescinded the limited guaranty by his letter of June 21, 1978. The letter does not purport to rescind the limited guaranty. Moreover, even if it could be so construed, Townsend had no grounds for rescission. *See* A. Stearns, *Suretyship* § 7.8, at 207 (5th ed. 1951). Under the terms of the limited guaranty, the letter was notice to the bank to make no further advances on the security of Townsend's limited guaranty, and the bank so understood it.

The third issue is whether the limited guaranty was abrogated by the bank's taking the October 6, 1978, note as evidence of the amount due, and releasing the other guarantors, the Lincolns and Zamelis, and the collateral without Townsend's consent. In the limited guaranty, Townsend agreed that "[t]he Bank shall not be bound to exhaust its recourse nor to take any action against the Customer or other parties or on the collateral it may hold before being entitled to payment by the undersigned . . ." He also agreed "to remain bound notwithstanding any extensions or renewals of any indebtedness or the liabilities hereby guaranteed or any part thereof," and consented "to the Bank to make such renewals and extensions as the Bank at its option may choose to grant or accept; and . . . release any collateral which it may now or hereafter hold . . ." Thus, all of the actions Sea–First took after receiving Townsend's letter were authorized by the limited guaranty and were directly related to the indebtedness arising from the letter of credit before the receipt of it.

■ The fourth issue is whether Townsend is liable for interest in excess of the $25,000 principal sum guaranteed. The limited guaranty provides, "[t]he liability of the undersigned at any one time hereunder is limited to the principal sum of *Twenty–five Thousand ($25,000)* Dollars, together with all interest due or to become due thereon to the Bank." Townsend was liable for interest on the principal amount upon West Coast's default, notice of which had been waived in the limited guaranty. *Rainier Nat'l Bank v. Clausing,* 34 Wn. App. 441, 447, 661 P.2d 1015 (1983); *see also National Bank v. Equity Investors,* 81 Wn.2d 886, 918, 506 P.2d 20 (1973).

As to the time of the default, the evidence established that West Coast made three monthly payments on the October 6, 1978 note, the first payment being due on January 15, 1979. Thus, West Coast became in default on April 16, 1979.

Because the limited guaranty does not specify a rate of interest, either directly or by reference, Townsend is liable

for interest at the legal rate. 38 C.J.S. *Guaranty* § 57, at 1213 (1943); RCW 19.52.010 (1979). The trial court's conclusion that Townsend is liable for interest at 12 percent from April 10, 1978, is incorrect.

The fifth issue is whether the trial court erred by excluding the testimony of G. Ben Bryce, Sea–First's vice–president, regarding the intentions and additional agreements of the parties. Because Townsend did not make an offer of proof at trial, as required by ER 103(a)(2), error, if any, has been waived.

The sixth issue is whether Sea–First violated the Consumer Protection Act, RCW 19.86, by any of the terms of the limited guaranty or by adding the following provision to the limited guaranty without Townsend's consent:

> Guarantor hereby grants a security interest to bank in the collateral hereby deposited with and pledged to bank to secure to bank the foregoing undertakings of guaranty.

▮ In order for a private individual successfully to bring an action under RCW 19.86, the conduct complained of must (1) be unfair or deceptive, (2) be within the sphere of trade or commerce, and (3) affect the public interest. *Anhold v. Daniels*, 94 Wn.2d 40, 45, 614 P.2d 184 (1980). The terms of the limited guaranty whereby Townsend waived virtually all of his surety defenses and consented to Sea–First's taking any action it deemed appropriate were not deceptive, but were clear and unambiguous. Further, they were not unfair. *See Fruehauf Trailer Co. of Can. Ltd. v. Chandler*, 67 Wn.2d 704, 409 P.2d 651 (1966). Sea–First's unauthorized addition to the limited guaranty, regarding Townsend's grant of a security interest in his bonds, above quoted, was not an unfair or deceptive act. It was done to clarify Sea–First's possession of the bonds.

The seventh issue is whether Sea–First is entitled to attorney fees. The limited guaranty provides:

> If this guaranty be referred to an attorney for enforcement or for collection, the undersigned agree to pay the costs and expenses of such action including reasonable attorney's fees and whether or not suit be commenced.

■ When the action commenced, Townsend did give back the $25,000, the face amount of the guaranty, but it was not an unconditional tender. Rather, the money reclaimed the $26,000 in bonds put up as collateral. The dispute over payment of the $25,000 guaranty was continued by Townsend, who filed a counterclaim seeking return of that sum. Because enforcement of the limited guaranty was the primary issue of the litigation, attorney fees should be awarded to Sea–First. *See American Sheet Metal Works, Inc. v. Haynes,* 67 Wn.2d 153, 159–60, 407 P.2d 429 (1965).

Accordingly, the judgment is reversed and remanded for redetermination of Townsend's liability for interest and attorney fees. Sea–First, having substantially prevailed, is entitled to costs on appeal. RAP 14.3.

APPENDIX

**LIMITED GUARANTY**

In consideration of financial accommodations given or to be given to *West Court Sales, Inc.*

................................................(herein called the Customer) by SEATTLE-FIRST NATIONAL BANK (herein called the Bank), and in consideration of the Bank's agreeing to deal with the Customer, the undersigned, on behalf of themselves and of the marital communities consisting of themselves and their respective spouses, if married, hereby jointly and severally guarantee payment to the Bank of all liabilities and indebtedness which the Customer has incurred or is under or may incur or be under to the Bank, whether arising from dealings between the Bank and the Customer or from other dealings by which the Bank may become in any way a creditor of the Customer.

The liability of the undersigned at any one time hereunder is limited to the principal sum of *Twenty-five thousand* ($25,000.0) .........Dollars, together with all interest due or to become due thereon to the Bank, and in addition, in case suit is instituted against the undersigned to collect all or any portion of the amount guaranteed, such additional sum as the court may adjudge reasonable as attorney's fees in such suit.

The Bank may apply all money received from the Customer or otherwise or from collateral upon such part of the Customer's indebtedness as the Bank may think best, without in any way limiting or lessening the liabilities of the undersigned under this guaranty

The Bank shall not be bound to exhaust its recourse nor to take any action against the Customer or other parties or on the collateral it may hold before being entitled to payment by the undersigned of all amounts hereby guaranteed, but may make such demands and take such actions as it deems advisable.

This shall be a continuing guaranty and shall be binding without notice to the undersigned of its acceptance, and shall cover all liabilities which the Customer may incur or be under until the undersigned shall have given the Bank notice in writing to make no further advances on the security of this guaranty; provided that such notice by any one or more of the undersigned or other guarantor shall not lessen nor diminish in any way the liability of the undersigned on any indebtedness or liability incurred prior to receipt by the Bank of such notice, nor lessen nor diminish the liability of others of the undersigned who shall not give such notice, and in the event of such notice the Bank may cease to make any further advances to the Customer.

Notice of default on the part of the Customer is hereby waived, and the undersigned jointly and severally agree to remain bound notwithstanding any extensions or renewals of any indebtedness or the liabilities hereby guaranteed or any part thereof, and consent is hereby given to the Bank to make such renewals and extensions as the Bank at its option may choose to grant or accept, and the Bank may at its option further compound and settle with the Customer or any of the undersigned or other guarantor and may substitute, surrender or release any collateral which it may now or hereafter hold belonging to the Customer or which secures the liabilities and indebtedness hereby guaranteed, all without notice to any of the undersigned and without affecting in any way the obligations of any of the undersigned to the Bank.

If the Customer is a corporation, the undersigned guarantee and represent that they are stockholders, or directors or officers and/or are financially interested in the Customer, and if married, their marital communities are so interested If this guaranty be referred to an attorney for enforcement or for collection, the undersigned agree to pay the costs and expenses of such action including reasonable attorney's fees and whether or not suit be commenced.

DATED at *Bellevue* Washington, this *15th* day of *July* 19 7 7

*H. W. Townsend*

*PO Box 291*

*Mercer Island WA 98040*

Guarantor hereby grants a security interest to bank in
the collateral hereby deposited with and pledged to bank
to secure to bank the foregoing undertakings of guaranty.

FORM 1408 REV 1/75

Feb. 22, 1980

Mr. Walter Moore, Vice Pres.
Seattle First National Bank
Business Service Center
100 6th Ave
Bellevue, Wa. 98009.

Dear Mr. Moore:

I had issued a check for $25,000 by Wash. Mut. Savings Banks which I
have endorsed to your bank in full payment of ist claim against me
described in King County Superior Court Cause 80-2-02591-1.

This is the case of Seattle-First v. West Coast Rubber and others
and includes my self as a guarantor. You are advised, however, that
in my making this payment I am not admitting the validity of the
banks claim and expressly reserve and do not waaive any claim or
claims I may have against the bank.

Please acknowledge receipt below

Yours truly,

*H. W. Townsend*
H. W. Townsend
1938 Tenth E.
Seattle, Wa 98102
(206)324 8661

In accepting the cashier check # 0393259 in the amount of $25,000.00
by Mr. Townsend, Seattle-First National Bank reserves and does not

waive any rights to accrued interest under the guaranty which it may have against Mr. Townsend.

SEATTLE-FIRST NATIONAL BANK
BELLEVUE-COMMERCIAL LOANS

Robert V. Tyrrell V.P.          Date

Mr. Townsend acknowledges receipt below:

Date

COLEMAN, J., and HOPP, J. Pro Tem., concur.

Reconsideration denied September 26, 1985.

Review denied by Supreme Court November 22, 1985.