## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| BLACK DIAMOND DEVELOPMENT COMPANY, LLC, a Washington Limited Liability Corporation; LEE WITTENBERG, individually and on behalf of his marital community; WAYNE COURTNEY, individually and on behalf of his marital community, | ) ) ) ) ) ) ) | No. 71114-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |
| Appellants, | ) ) ) | |
| v. | ) ) | |
| UNION BANK, N.A., | ) ) | |
| Respondent. | ) ) ) | FILED: March 30, 2015 |

LEACH, J. — Black Diamond Development LLC and guarantors Lee Wittenberg and Wayne Courtney appeal the dismissal of their claims against Union Bank for an alleged breach of a permanent financing agreement and an award of attorney fees to Union Bank. Union Bank challenges the timeliness of this appeal. Because the court resolved Union Bank's counterclaim no earlier than October 17, 2013, Black Diamond timely appealed. Because the alleged financing agreement omits material terms and does not satisfy the requirements of 12 U.S.C. § 1823(e), Union Bank has no contractual obligation to extend permanent financing to Black Diamond. But because Black Diamond put Union Bank on notice of its improper accounting claim and the court did not consider

the merits of the claim, the trial court erroneously dismissed it. As a result, no party has yet prevailed in this case, and any award of attorney fees is premature. We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

## FACTS

On November 28, 2005, Black Diamond Development LLC and Frontier Bank made an agreement for the construction financing of two commercial buildings in Black Diamond, Washington. They signed 11 related documents for the transaction. These included a construction loan agreement, commercial guarantees executed by Black Diamond members Lee Wittenberg and Wayne Courtney, a deed of trust, a promissory note, and the notice of final agreement.

In 2007, Black Diamond and Frontier Bank signed two documents extending the maturity date of the construction loan agreement. The first extended it 90 days, and the second extended it until September 25, 2010.

On April 30, 2010, Frontier Bank failed. Union Bank became the successor in interest to the Federal Deposit Insurance Corporation (FDIC) as receiver of Frontier Bank and acquired the Black Diamond construction loan. In May 2010, Union Bank contacted Black Diamond to inform it that the loan agreement would mature in September. Black Diamond challenged that date based on its understanding that it had an agreement with Frontier Bank for

permanent financing. From 2010 to July 2012, Black Diamond continued to make principal and interest payments to Union Bank, despite the loan agreement's maturation.

In January 2012, Union Bank issued a notice of default to Black Diamond, demanding all funds owed under the loan agreement. Union Bank issued revised notices in June and August of 2012, stating the amount it claimed Black Diamond owed after it defaulted by failing to pay the full balance owed when the loan matured in 2010. In response, Black Diamond denied the default and requested information about Union Bank's default calculation.

Procedural History

On August 9, 2012, Black Diamond filed a complaint, asserting breach of contract and estoppel claims. For relief, it requested damages and a permanent injunction to prevent foreclosure or pursuit of default as long as it made the "required monthly payment on the loan." On September 11, 2012, Black Diamond filed a "motion for preliminary injunction and order directing defendant to provide an accounting." The trial court did not rule on this motion. To avoid foreclosure, Black Diamond paid "'under protest'" the amount Union Bank claimed due and informed the bank that it did "'not agree that the bank has properly calculated the amount that is owing for many reasons, which is the basis of the lawsuit.'"

Union Bank filed its answer and counterclaim on June 18, 2013. In the counterclaim, it alleged that Black Diamond owed it attorney fees under the construction loan agreement and Wittenberg and Courtney owed them under their guarantees. Black Diamond, Wittenberg, and Courtney filed a reply on July 3, 2013, denying any default, alleging that Wittenberg and Courtney's guarantee liability ended when Black Diamond paid the full amount Union Bank claimed, and asserting seven affirmative defenses.

In late 2012, Black Diamond served its first discovery request, asking for documents revealing the amount and calculations for every line item charged on default. On July 2, 2013, the trial court granted Black Diamond's motion to compel Union Bank's production of internal documents.

On July 19, 2013, Union Bank filed a motion for summary judgment. Black Diamond filed a motion to stay any hearing on this motion until after Union Bank provided the ordered discovery materials. The trial court granted summary judgment to Union Bank on August 30, 2013. The trial court decided that Union Bank had no obligation to provide permanent financing to Black Diamond because the alleged agreement "is missing some material provisions that defeat it as a contract. . . . [I]f I'm looking at the commitment letter, there aren't enough—what is left to negotiate is really a vast majority of the contract and not simply small terms."

On September 9, 2013, Black Diamond filed a motion for clarification and reconsideration, asking the court to address its accounting claim based upon Union Bank's alleged misapplication of payments. On October 2, 2013, the trial court denied Black Diamond's motion. On October 17, 2013, the trial court entered an order awarding Union Bank $93,154.54 in attorney fees against Black Diamond, Wittenberg, and Courtney. On October 31, 2013, the court entered a final judgment, dismissing all claims with prejudice and holding Black Diamond, Wittenberg, and Courtney jointly and severally liable for the attorney fees.

Black Diamond, Wittenberg, and Courtney appealed on November 5, 2013.

## STANDARD OF REVIEW

This court reviews a summary judgment motion de novo.[1] A court properly grants summary judgment if no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law.[2]

## ANALYSIS

### Timeliness of Appeal

Union Bank challenges this court's authority to hear this appeal, claiming Black Diamond, Wittenberg, and Courtney filed it too late. Black Diamond

---

[1] Snohomish County v. Rugg, 115 Wn. App. 218, 224, 61 P.3d 1184 (2002).

[2] CR 56(c).

argues that it had 30 days after the final judgment entered on October 31, 2013, to appeal all issues decided by the trial court. Union Bank argues that the time to appeal should be measured from one of two dates, either August 30, when the trial court entered its order granting Union Bank summary judgment, or October 1, when the trial court entered its order denying Black Diamond's motion for reconsideration and clarification. It argues that those orders resolved all substantive claims, leaving undecided only issues of attorney fees.

RAP 5.2(a) generally requires that a party seeking appellate review of a superior court decision file a notice of appeal within 30 days after the trial court's entry of a final judgment. For purposes of this deadline, this rule considers as final a judgment that finally decides all substantive issues between the parties but reserves for a future decision "an award of attorney fees or costs."[3]

> A timely notice of appeal of a trial court decision relating to attorney fees and costs does not bring up for review a decision previously entered in the action that is otherwise appealable under rule 2.2(a) unless a timely notice of appeal has been filed to seek review of the previous decision.[4]

A motion for reconsideration of a final judgment extends the appellate filing deadline to 30 days after the trial court's entry of an order on that motion.[5]

---

[3] Carrara, LLC v. Ron & E Enters., Inc., 137 Wn. App. 822, 825-27, 155 P.3d 161 (2007); RAP 2.2(a)(1).

[4] RAP 2.4(b).

[5] RAP 5.2(e); Brower v. Pierce County, 96 Wn. App. 559, 562, 984 P.2d 1036 (1999) (citing Buckner, Inc. v. Berkey Irrig. Supply, 89 Wn. App. 906, 911-12, 951 P.2d 338 (1998)).

"[O]nly in extraordinary circumstances and to prevent a gross miscarriage of justice"[6] will an appellate court extend the time to file a notice of appeal. Black Diamond has not requested an extension of time.

When a case includes multiple claims,

> the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination in the judgment, supported by written findings, that there is no just reason for delay and upon an express direction for the entry of judgment.[7]

If the trial court has not decided all of the claims or all of the rights and liabilities of the parties, a judgment "is subject only to discretionary review until the entry of a final judgment adjudicating all the claims, counts, rights, and liabilities of all the parties."[8]

On August 30, 2013, the trial court entered a summary judgment order dismissing Black Diamond's claims with prejudice. But the court did not decide Union Bank's counterclaim for attorney fees against Black Diamond under the construction loan agreement and against Wittenberg and Courtney under their commercial guarantees. The plaintiffs asserted seven affirmative defenses to the counterclaim, many of which challenged the viability of the contracts providing the basis for the counterclaim. The order denying Black Diamond's motion for

---

[6] RAP 18.8(b).
[7] CR 54(b).
[8] RAP 2.2(d).

reconsideration also did not address the merits of Union Bank's counterclaim or the plaintiffs' affirmative defenses to it. Until the court decided the merits of these issues, it had not entered a final judgment that commenced the 30-day appeal period.

Union Bank cites <u>Carrera, LLC v. Ron & E Enterprises, Inc.</u>,[9] and <u>Bushong v. Wilsbach</u>[10] for the proposition that a party must appeal an order granting summary judgment and dismissing all claims, though a court has not decided attorney fees and costs. But as Black Diamond argues, in <u>Carrera</u> and <u>Bushong</u> appellants appealed more than 30 days after a court decision resolving all claims and establishing a right to recover fees. This precluded them from challenging the earlier decision establishing a legal basis for the fees awarded by a later decision.[11] The trial court's summary judgment order and its order denying reconsideration left unresolved more than the amount of attorney fees and costs. The court's October 17, 2013, order granting attorney fees resolved the seven alleged affirmative defenses to the counterclaim as well as the individual plaintiffs' liability on their guarantees. Thus, <u>Carrera</u> and <u>Bushong</u> do not support Union Bank's position. Because no final judgment resolving Union Bank's

---

[9] 137 Wn. App. 822, 825, 155 P.3d 161 (2007).
[10] 151 Wn. App. 373, 376-77, 213 P.3d 42 (2009).
[11] <u>Carrara</u>, 137 Wn. App. at 826; <u>Bushong</u>, 151 Wn. App. at 376.

counterclaim entered before October 17, 2013, Black Diamond timely filed its notice of appeal on November 5, 2013.

Permanent Financing

Black Diamond contends that the record establishes the existence of genuine issues of material fact about an agreement for permanent financing. Union Bank responds that the record shows no genuine issues of material fact exist about the failure of Black Diamond and Frontier to agree to necessary terms, about the failure of Black Diamond to perform conditions required under its alleged contract, or about the application of 12 U.S.C. § 1823(e) to bar Black Diamond's claim.

Washington courts use an objective manifestation test to determine if parties have formed a contract.[12] This means that the parties must objectively manifest their mutual agreement to the contract terms.[13] In addition, a contract for real estate financing "must be definite enough on material terms to allow enforcement without the court supplying those terms."[14]

Black Diamond argues that Frontier Bank's loan commitment letter, the 2005 loan agreement documents, and later documents authored by a Frontier Bank vice president meet these requirements or at least raise genuine issues of

---

[12] Keystone Land & Dev. Co. v. Xerox Corp., 152 Wn.2d 171, 177, 94 P.3d 945 (2004).
[13] Keystone Land & Dev., 152 Wn.2d at 177.
[14] Setterlund v. Firestone, 104 Wn.2d 24, 25, 700 P.2d 745 (1985).

material fact. Union Bank disputes whether the court should consider some of these documents and contends that they do not contain all of the material and essential terms. It identifies as missing the loan amount, default terms, prepayment terms, and cure rights. But Black Diamond responds that the commitment letter and promissory note contain the amount agreed upon. It claims the 2007 agreement, the promissory note, and the deed of trust provide the agreed upon default terms and cure rights. It also argues that the 2007 agreement and the promissory note contain the prepayment terms.

Union Bank first argues RCW 19.36.110 prohibits the use of e-mail or other correspondence to establish the rights and obligations of the parties. This statute states, "The rights and obligations of the parties to a credit agreement shall be determined solely from the written agreement." Because the documents relied upon by Black Diamond do not establish an enforceable agreement, we do not need to decide this issue.

Union Bank next argues that no mutual assent to necessary terms occurred. In Hubbell v. Ward,[15] the court identified 13 material terms absent from the real estate contract in issue required to support a specific performance claim. The contract contemplated a future purchase contract, but the parties had not specified the terms of this contract. As a result, the court did not enforce the

_____

[15] 40 Wn.2d 779, 782-83, 246 P.2d 468 (1952).

contract because no mutual assent occurred.[16] The 13 necessary terms included the right to default.[17] A contract must also contain a price or amount.[18]

Black Diamond cites Farm Crop Energy, Inc. v. Old National Bank of Washington[19] to argue that the loan documents contained sufficient terms. Though the Farm Crop court did not address the issue of what material terms an agreement for permanent financing must contain and remanded the case on different grounds, Black Diamond finds it instructive because the court tacitly accepts a trial court jury instruction, stating, a "loan commitment is a written contract which obligates the bank to loan money to the plaintiff . . . in accordance with the terms and conditions of the commitment."[20] The commitment letter produced in full by the dissent in that case contains certain terms—interest rate, amortization, collateral, duration, payment schedule, and loan amount.[21] Black Diamond argues that the Frontier Bank commitment letter with similar terms also creates a contract.

But, as Union Bank correctly notes, Frontier Bank's loan commitment letter offered no more than an "agreement to agree,"[22] unenforceable in

---

[16] Hubbell, 40 Wn.2d at 786-87.

[17] Hubbell, 40 Wn.2d at 782.

[18] Hubbell, 40 Wn.2d at 780-81; Sea-Van Invs. Assocs. v. Hamilton, 125 Wn.2d 120, 129, 881 P.2d 1035 (1994).

[19] 109 Wn.2d 923, 750 P.2d 231 (1988).

[20] Farm Crop, 109 Wn.2d at 938 n.2 (Callow, J., dissenting).

[21] Farm Crop, 109 Wn.2d at 934-36 (Callow, J., dissenting).

[22] See Keystone Land & Dev., 152 Wn.2d at 175-76.

Washington.[23] The letter states, "When all conditions governing a roll over loan have been met, Frontier Bank shall have the exclusive right to place the permanent financing of the subject property for a maximum period of three months at terms and conditions that are acceptable to Borrower and Lender."

A document contemplating future negotiations does not establish mutual assent to a binding agreement.[24] To be enforceable, "[a] contract to enter into a future contract must specify all its material and essential terms, and leave none to be agreed upon as the result of future negotiations."[25] The commitment letter cannot be read to promise more than permanent financing on future "terms and conditions that are acceptable to Borrower and Lender." It plainly contemplates a future agreement for permanent financing at unstated terms and conditions. The documents identified by Black Diamond do not show any objective manifestation of mutual intent to incorporate the terms of the 2005 loan documents in permanent financing. At best, they reaffirm Frontier Bank's initial promise to provide permanent financing on terms to be negotiated in the future.

Further, the record shows that Black Diamond never met the conditions described in the documents it claims establish an agreement for permanent financing. The commitment letter identified two conditions Frontier required

---

[23] Keystone Land & Dev., 152 Wn.2d at 176.
[24] Keystone Land & Dev., 152 Wn.2d at 179.
[25] Hubbell, 40 Wn.2d at 784-85; Kruse v. Hemp, 121 Wn.2d 715, 722, 853 P.2d 1373 (1993).

before making a loan for permanent financing: (1) construction of Building C and (2) the aggregate collected rents of both buildings B and C equal $381,000 or more. Black Diamond argues that it fulfilled the condition when it achieved aggregate collected rent of $381,000 for building B alone. But it never built Building C, and the record does not reveal that the parties agreed to waive that condition.[26] At oral argument, Black Diamond conceded that the absence of Building C would materially affect the value of the collateral it offered for permanent financing.

Finally, Union Bank claims that 12 U.S.C. § 1823(e) bars Black Diamond's contract claim. This statute limits the agreements enforceable against the FDIC or its successor in interest. To be enforceable, the agreement must (1) be in writing, (2) be executed by the parties contemporaneous with the acquisition of the asset (permanent loan), and (3) be approved by the bank's board of directors or loan committee, with this approval reflected in meeting minutes maintained continuously by the bank as an official record.[27] An agreement must satisfy all these requirements to be enforceable against the FDIC or its successor in interest.[28]

---

[26] See Sea-Van Invs., 125 Wn.2d at 127.

[27] 12 U.S.C. § 1823(e); D'Oench, Duhme & Co. v. Fed. Deposit Ins. Corp., 315 U.S. 447, 456, 62 S. Ct. 676, 86 L. Ed. 956 (1942).

[28] Bell & Murphy & Assocs., Inc. v. Interfirst Bank Gateway, N.A., 894 F.2d 750, 754 (5th Cir. 1990); see Nw. Land & Inv., Inc. v. New W. Fed. Sav. & Loan Ass'n, 64 Wn. App. 938, 943-44, 827 P.2d 334 (1992).

Union Bank argues that no genuine issue of material fact exists as to whether the parties fully and contemporaneously executed an agreement for permanent financing. Black Diamond argues that the loan documents expressly contained a permanent financing obligation, placing this situation outside of that covered by 12 U.S.C. § 1823(e).[29] But "the proper inquiry is 'whether the borrower lent himself to a scheme or arrangement that would be likely to mislead or deceive banking authorities.'"[30] Black Diamond relies upon a 2005 loan agreement, a commitment letter, and 2007 agreements executed at different times. These documents do not satisfy the requirement for document execution contemporaneous with acquisition of the pertinent asset. 12 U.S.C. § 1823(e) bars Black Diamond's claims.

Improper Accounting

Black Diamond asserts that genuine issues of material fact exist concerning its claim for "incorrect and excessive amounts" Union Bank charged it on default and that the court erred in dismissing its motion for reconsideration and clarification. Black Diamond contends the court failed to decide if Union Bank improperly calculated the amount Black Diamond owed on default, as well

---

[29] See In re Beitzell & Co., Inc., 163 B.R. 637, 649 (Bankr. D.D.C. 1993) ("A careful examination of the cases finding that a claim or defense is barred by D'Oench and/or § 1823(e) reveals that those defenses or claims are premised solely on unrecorded agreements, promises or representations and not on any obligation found explicitly in the loan documents.").

[30] Beitzell, 163 B.R. at 646 (incorrectly quoting D'Oench, 315 U.S. at 460).

as whether the bank charged Black Diamond for environmental regulation compliance reviews and an appraisal after assuring Black Diamond it would not. Union Bank asserts that Black Diamond did not plead this claim and that in any case the improper accounting claim was not ripe for review.

Washington requires a party to give proper notice of a claim to opposing parties in its pleadings through "'a concise statement of the claim and the relief sought.'"[31] A complaint fails if it does not give defendants proper notice.[32] But courts construe pleadings "to do substantial justice,"[33] and even if a "claim 'is not a vision of precise pleading,'" it may still give the notice required by CR 8.[34]

In its original complaint, Black Diamond alleged that it paid Union Bank $61,350 as an up-front permanent loan commitment fee, that Union Bank did not credit Black Diamond for loan payments, and that the bank improperly charged Black Diamond for appraisal and environmental reviews. The complaint stated,

> 24. . . . Plaintiffs believe that Defendant has improperly calculated the interest, failed to properly apply payments to principal and is seeking repayment of improper amounts in the appraisal and environmental review categories, as those costs relate,

---

[31] Champagne v. Thurston County, 163 Wn.2d 69, 84, 178 P.3d 936 (2008) (quoting Pac. Nw. Shooting Park Ass'n v. City of Sequim, 158 Wn.2d 342, 352, 144 P.3d 276 (2006)); CR 8(a).

[32] Champagne, 163 Wn.2d at 84.

[33] CR 8(f).

[34] Burnet v. Spokane Ambulance, 131 Wn.2d 484, 492, 933 P.2d 1036 (1997) (quoting Schoening v. Grays Harbor Cmty. Hosp., 40 Wn. App. 331, 336-37, 698 P.2d 593 (1985)).

substantially or in part, to the very loan which Plaintiffs sought and Defendant refused to give.

In its answer and counterclaim, Union Bank affirmed the amounts it claimed Black Diamond owed and denied the allegations in paragraph 24. We conclude that Black Diamond sufficiently pleaded a claim that Union Bank failed to properly calculate the amount owed on default.

Union Bank argues that Black Diamond proved its original complaint did not assert this claim because it later served a proposed amended complaint, specifically stating this claim before summary judgment and filed a motion for clarification also addressing the improper accounting claim postsummary judgment. Union Bank also argues that Black Diamond untimely attempted to amend the complaint under CR 15(a) and King County Local Rule (KCLR) 4.2 by surreptitiously adding the claim into its motion for clarification. The bank cites Doyle v. Planned Parenthood of Seattle-King County, Inc.,[35] Haselwood v. Bremerton Ice Arena, Inc.,[36] and Parry v. Windermere Real Estate/East, Inc.,[37] to

[35] 31 Wn. App. 126, 132, 639 P.2d 240 (1982) (plaintiff improperly tried to amend a complaint to include a products liability claim not recognized by Washington).

[36] 137 Wn. App. 872, 889-90, 155 P.3d 952 (2007) aff'd sub nom. Estate of Haselwood v. Bremerton Ice Arena, Inc., 166 Wn.2d 489, 210 P.3d 308 (2009) (the Court of Appeals found no prejudice in the trial court's dismissal of the motion to amend and claims were groundless because they alleged a violation of Washington's public works act, chapter 39.04 RCW, though the case involved a private project).

[37] 102 Wn. App. 920, 10 P.3d 506 (2000). Union Bank cites this case to show that KCLR 4.2(a)(1) prohibits raising additional claims or defenses after the date designated in the case schedule. But the court actually concludes that "it

support this position. But we do not find cases about late amendments to a complaint helpful because we conclude that Black Diamond sufficiently pleaded a claim for improper accounting in its original complaint. While Black Diamond's proposed amended complaint more clearly asserted this claim, this clearer statement does not alter the fact that paragraph 24 of its original complaint provided sufficient notice to Union Bank.

Union Bank also claims that the improper accounting claim first became ripe when Black Diamond asked Union Bank for its payoff demand in October 2012, after it filed its August 2012 complaint. To determine if a claim presents a cause of action ripe for review, a court evaluates the fitness of the issues for judicial review and the hardship that withholding consideration would bring to the parties.[38] Union Bank first issued a notice of default to Black Diamond on January 11, 2012. This notice demanded an aggregate amount of $2,767,089.79 due, with interest accruing daily. Union Bank issued a new notice on June 11, 2012. This default notice provides an accounting, demands payment, lists consequences of default, and states that borrowers and guarantors have recourse to the courts to "contest the alleged default on any proper ground." It

would defy logic to hold that a party's properly preserved defense is waived merely by signing a form required by local rule for case scheduling and management." Parry, 102 Wn. App. at 928.

[38] First United Methodist Church v. Hearing Exam'r, 129 Wn.2d 238, 245, 916 P.2d 374 (1996).

includes a claim for costs including an "appraisal" of $11,300.00 and a fee for "environmental" of $2,200.00. A final August 13, 2012, default notice contains the same information. We conclude that the specific amounts Union Bank demanded and the foreclosure Black Diamond faced if it did not pay those amounts made the issue ripe for review.

The court erroneously found that "all of plaintiffs' claims arose out of plaintiffs' mistaken belief that the Construction Loan Agreement obligated Union Bank to extend permanent financing" and did not address the issue of an alleged improper accounting. We reverse the dismissal of this claim.[39]

Equitable Estoppel

The trial court also dismissed Black Diamond's equitable estoppel claim. Black Diamond argues that "[i]ndependent from overages on default," this court should estop Union Bank from collecting default interest and penalties because of Union Bank's representations about the extension of permanent financing. Union Bank cites case law to argue that equitable estoppel may operate only as a defense, not an offense. Therefore, the bank argues, Black Diamond may not assert its estoppel claim.

---

[39] See Beers v. Ross, 137 Wn. App. 566, 569, 154 P.3d 277 (2007); Ash v. Dep't of Labor & Indus., 173 Wn. App. 559, 566-67, 294 P.3d 834 (2013).

But a party seeking damages based on an estoppel claim must assert a promissory estoppel claim, not a claim for equitable estoppel.[40] While at least one Washington case recasts a claim for equitable estoppel as one for promissory estoppel,[41] we decline to do so here. A claim for promissory estoppel requires a plaintiff to prove that a promise was made and the promisor should reasonably expect that promise to cause the promisee to change positions, the promise does cause the promisee to do so, and the promisee justifiably relies on the promise in such a way that a court's enforcement of the promise provides the only way to prevent injustice.[42]

Black Diamond has not presented evidence sufficient to create a genuine issue of material fact about any promise for permanent financing on which it could justifiably rely. The trial court did not err in dismissing its estoppel claim.

Motion To Stay Pending Discovery

Before Union Bank filed its motion for summary judgment, the trial court granted Black Diamond's motion to compel Union Bank to provide e-mail documentation. When Union Bank filed its summary judgment motion, Black Diamond filed a CR 56(f) motion for a stay until it received pending discovery.

---

[40] Klinke v. Famous Recipe Fried Chicken, Inc., 94 Wn.2d 255, 259, 616 P.2d 644 (1980); McCormick v. Lake Wash. Sch. Dist., 99 Wn. App. 107, 117, 992 P.2d 511 (1999).

[41] See, e.g., McCormick, 99 Wn. App. at 117.

[42] Havens v. C&D Plastics, Inc., 124 Wn.2d 158, 171-72, 876 P.2d 435 (1994).

The court reserved its decision on the CR 56(f) motion for oral argument on August 30, 2013. On that date, the trial court granted Union Bank's summary judgment motion, without the bank's production of documents.[43]

An appellate court reviews denial of a CR 56(f) motion for abuse of discretion.[44] A trial court abuses its discretion when its decision is manifestly unreasonable or based upon untenable grounds or untenable reasons.[45] If the requesting party does not offer a good reason for the delay in obtaining the desired evidence or fails to state what the evidence would establish or the evidence will not raise a genuine issue of material fact, the court may deny the motion.[46]

Black Diamond argues that it required additional discovery to resolve factual issues about the intent of the parties and the meaning of agreement terms. Union Bank counters that no genuine issue of material fact as to the parties' mutual assent to terms exists because the alleged agreement did not

---

[43] As Union Bank mentions, the standard under CR 26(b)(1) requires only that requested discovery be "relevant to the subject matter involved in the pending action," and thus the court could grant a CR 26 motion but deny a CR 56(f) motion under the rule's more stringent standard.

[44] Tellevik v. 31641 W. Rutherford St., 120 Wn. 2d 68, 90, 838 P.2d 111 (1992) (citing Coggle v. Snow, 56 Wn. App. 499, 504, 784 P.2d 554 (1990)).

[45] T.S. v. Boy Scouts of Am., 157 Wn.2d 416, 423, 138 P.3d 1053 (2006) (quoting State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

[46] Pitzer v. Union Bank of Cal., 141 Wn.2d 539, 556, 9 P.3d 805 (2000) (quoting Tellevik, 120 Wn.2d at 90).

contain necessary material terms. Therefore internal e-mail could not prove to a fact finder any bilateral intent to agree.

Black Diamond sought the requested documents to prove the existence and scope of a contract for permanent financing, breach of Frontier Bank's duty to act in good faith, and the application of the D'Oench[47] doctrine under 12 U.S.C. § 1823(e). But Union Bank had placed the loan file into evidence. Black Diamond does not show how any further evidence would have raised an issue of material fact about the missing necessary material terms. Thus, we conclude that the court did not abuse its discretion when it denied Black Diamond's motion for stay pending discovery.

## Wittenberg and Courtney's Joint and Several Liability

In its October 17, 2013, order, the trial court stated that the attorney fees clause in the 2005 loan agreement and the commercial guarantees entitled Union Bank to attorney fees and that "[p]laintiffs Lee Wittenberg and Wayne Courtney are individually liable for Union Bank's attorneys' fees under the terms of the Commercial Guaranties." The October 31, 2013, judgment states, "Plaintiffs Black Diamond Development Company, LLC, Lee Wittenberg and Wayne Courtney are jointly and severally liable for Union Bank, N.A.'s attorneys' fees and costs." Black Diamond argues that the court erred in finding Wittenberg

---

[47] D'Oench, Duhme & Co. v. Fed. Deposit Ins. Corp., 315 U.S. 447, 62 S. Ct. 676, 86 L. Ed. 956 (1942).

and Courtney liable for attorney fees because Black Diamond paid the principal debt and asserts that the court prematurely awarded attorney fees because it never addressed the improper accounting issue.

This court reviews de novo whether a contractual provision authorizes an award of attorney fees.[48] Under Washington law, "when [a] principal debt has been discharged, the guarantor is likewise relieved of liability."[49] But if a contract's language provides otherwise, a court will hold a guarantor liable.[50] Here, the 2005 loan agreement states, "Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement." The commercial guaranty agreements signed by Wittenberg and Courtney, respectively, provide, "Guarantor agrees to pay upon demand . . . Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty." The agreements make each guarantor responsible for the "Indebtedness of Borrower to Lender" and define indebtedness to include attorney fees.

---

[48] Tradewell Grp., Inc. v. Mavis, 71 Wn. App. 120, 126, 857 P.2d 1053 (1993).

[49] Fruehauf Trailer Co. of Canada Ltd. v. Chandler, 67 Wn.2d 704, 707, 409 P.2d 651 (1966).

[50] Seattle-First Nat'l Bank v. W. Coast Rubber Inc., 41 Wn. App. 604, 609-10, 705 P.2d 800 (1985).

This action arose out of Black Diamond's breach of contract claims asserted under the 2005 agreement and the 2007 agreement. Because the complaint named Wittenberg and Courtney as plaintiffs and they sued as guarantors and Union Bank incurred legal expenses "in connection with the enforcement of this Guaranty," we hold that despite the payment of the principal debt, the contract language makes Wittenberg and Courtney jointly and severally liable for attorney fees.

However, in a contract dispute, a court only awards attorney fees to a prevailing party.[51] Because the trial court did not resolve the issue of improper accounting, the prevailing party cannot be determined yet. The trial court prematurely awarded attorney fees to Union Bank. As this court suggested to counsel at oral argument, the amounts at issue strongly suggest the ultimate outcome of this issue. But Black Diamond has the right to have this issue decided by the trial court after resolution of its accounting claim. On remand, the trial court shall also have the authority to award attorney fees on appeal to the ultimately prevailing party, if any.

## CONCLUSION

Black Diamond timely filed its appeal on November 5, 2013, because the trial court did not decide all claims of all parties until it determined the guarantors'

---

[51] RCW 4.84.330; Wachovia SBA Lending, Inc. v. Kraft, 165 Wn.2d 481, 489, 200 P.3d 683 (2009).

joint and several liability on October 17, 2013. Because the alleged financing agreement omits material terms and does not satisfy the requirements of 12 U.S.C. § 1823(e), Union Bank has no contractual obligation to extend permanent financing to Black Diamond. But because Black Diamond put Union Bank on notice of its improper accounting claim and the court did not consider the merits of the claim, the trial court erroneously dismissed it. As a result, no party has yet prevailed in this case, and any award of attorney fees is premature. We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

Leach, J

WE CONCUR:

Spearman, C.J.                    Appelwick, J.