IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34223-9-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JULIO G. RAMIREZ, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, A.C.J. — Julio Ramirez appeals his conviction for second

degree rape. He argues the sentencing court abused its discretion by not considering the

mitigating factors he presented and by categorically denying his request for an

exceptional sentence downward. He also argues the trial court abused its discretion when

it prohibited him from cross-examining the victim about whether she had ever kissed her

roommate. Finally, he argues insufficient evidence supports the jury's finding that the

victim was asleep when he had intercourse with her. We disagree with Mr. Ramirez's

arguments and affirm his conviction and sentence.

FACTS

H.S.[1] and Mr. Ramirez became friends in high school. On one occasion, H.S. attended one of Mr. Ramirez's parties. Mr. Ramirez was intoxicated, pushed H.S. onto his bed, took off her shirt, and tried to kiss her. H.S. was not romantically interested in Mr. Ramirez and did not want to be intimate with him. She pushed him to the side, put her shirt back on, and left.

On another occasion, after they had graduated from high school, Mr. Ramirez stopped by H.S.'s apartment and the two sat and talked on the couch. Mr. Ramirez then grabbed H.S.'s hands and said he was romantically interested in her. H.S. did not feel the same, but told Mr. Ramirez she would let him know if that changed.

On January 31, 2015, H.S., H.S.'s female roommate, and Mr. Ramirez went to a house party together. They stayed at the party for a few hours and left around 2:00 a.m. H.S.'s roommate wanted to pick up her boyfriend, so H.S. and Mr. Ramirez drove back together to H.S.'s apartment.

Mr. Ramirez told H.S. he did not want to go home, because he lived with his parents and did not want them to know he had been drinking. Mr. Ramirez was 18 years

---

[1] We use the victim's initials to protect her privacy.

old at the time. H.S. told Mr. Ramirez that he could stay at her apartment. She told him he could sleep on her bed. Mr. Ramirez put on a movie, and H.S. fell asleep.

Sometime later, H.S. awoke to Mr. Ramirez trying to remove her clothing. When H.S. told Mr. Ramirez to stop, he complied. H.S. went back to sleep.

The next time H.S. woke up, she discovered she had been digitally penetrated by Mr. Ramirez. H.S. then started crying during what she described as additional acts of unwanted sexual contact. Mr. Ramirez eventually stopped and H.S. asked him to leave, which he did.

Several days later, H.S. went to the emergency room to get tested for sexually transmitted diseases. While there, she reported she had been sexually assaulted. Hospital staff called the police.

The State charged Mr. Ramirez with one count of second degree rape and one count of third degree rape. At trial, the State called H.S., who testified to the events described above. During direct examination, H.S. testified that when she woke up, Mr. Ramirez's fingers were in her vagina. The State then asked, "Did you feel his finger initially go into you?" Report of Proceedings (RP) (Dec. 15, 2015) at 47. H.S. responded, "I don't think so." RP (Dec. 15, 2015) at 47. The State then asked, "When

3

you first realized you were awake, was his finger inside or outside your body?" RP (Dec. 15, 2015) at 48. H.S. responded, "Inside." RP (Dec. 15, 2015) at 48.

Toward the end of H.S.'s testimony, the State asked H.S.:

Did you have any [reason] to hide a consensual sexual relationship with Mr. Ramirez from, maybe a man who was interested in you or some other reason for hiding a consensual relationship?

1 RP at 79. H.S. said she did not.

Defense counsel began to cross-examine H.S. The following exchange then occurred:

[Defense counsel]: What was the nature of your relationship with [K.W.]?
[H.S.]: We were friends and roommates.
[Defense counsel]: It wasn't romantic at all?
[H.S.]: No.
[Defense counsel]: You had never kissed her?
     [Prosecutor]: Your Honor, I'm going to object.
     THE COURT: I'm going to sustain it.
[Defense counsel]: More limited: Did you—From the time that the prosecutor asked whether or not you were in any sort of relationship with anybody, at the time of this incident did you have a relationship at all that was romantic at all or sexual at all, or involved kissing at all, during this— on the date of February 1st?
[H.S.]: No.

1 RP at 79-80. Defense counsel then moved to a different subject.

The jury found Mr. Ramirez guilty of second degree rape and not guilty of third degree rape. Following trial, Mr. Ramirez filed a motion requesting an exceptional

4

sentence downward. He argued two mitigating factors supported his request. First, relying chiefly on *State v. O'Dell*, 183 Wn.2d 680, 358 P.3d 359 (2015), he argued his young age and immature intellectual capacity rendered him less culpable. Second, he asserted that because of his traditional and religious upbringing, he received "no instruction or education on the nuances of modern sexual mores." Clerk's Papers (CP) at 39. He argued this lack of understanding led him to believe that H.S. gave him implicit consent when she shared a bed with him and changed in front of him.

At the sentencing hearing, Mr. Ramirez argued at length that these two factors supported an exceptional sentence downward. The State responded by arguing that Mr. Ramirez's age was not a mitigating factor because it only requires a low level of maturity for a person to understand he or she cannot have intercourse with someone who is asleep. The State also argued that although Mr. Ramirez was young, he was as capable as other 18-year-olds: he volunteered, worked, was a college student, had mature plans for his profession, and was not developmentally delayed.

The court began its ruling by explaining the difficult nature of the case. The court acknowledged Mr. Ramirez's young age, and stated this factor made its decision more difficult, given how the conviction and sentence would significantly affect Mr. Ramirez's life. The court stated Mr. Ramirez made a good argument for an exceptional sentence

downward, noting that modern brain science reflects that young people's brains are still developing and learning appropriate judgment.

However, the court also noted Mr. Ramirez was raised in a household with appropriate social mores, boundaries, and parenting. It noted Mr. Ramirez attended school and interacted socially. The court further noted Mr. Ramirez had interacted with H.S. socially before, and had understood and honored her refusals of consent in the past. The court agreed that modern sexual mores may put more strain on a young person's ability to be appropriate, exercise the right judgment, and not cross the line. However, the court then stated that "regardless of social mores and regardless of youth, regardless of impulsivity or lack of brain development, there is consent. That is the ultimate line." 2 RP at 304.

The court found Mr. Ramirez had normal emotional and mental abilities. The court further found that Mr. Ramirez had demonstrated reasoned judgment in the past, knew what the right decision was in this case, but ultimately failed to demonstrate appropriate judgment. The court concluded there was no reason to deviate from the standard range and denied Mr. Ramirez's request for an exceptional sentence downward. The court then imposed a low-end standard range sentence of 78 months' incarceration. Mr. Ramirez appeals.

6

ANALYSIS

A.   REQUEST FOR EXCEPTIONAL SENTENCE DOWNWARD

Mr. Ramirez argues the sentencing court abused its discretion by not considering the mitigating factors he presented and by categorically denying his request for an exceptional sentence downward.

Generally, a defendant cannot appeal a standard range sentence. *See* RCW 9.94A.585(1); *State v. Osman*, 157 Wn.2d 474, 481, 139 P.3d 334 (2006). However, a defendant may challenge the procedure by which a sentence within the standard range is imposed. *State v. Garcia-Martinez*, 88 Wn. App. 322, 329, 944 P.2d 1104 (1997). When a defendant requested an exceptional sentence downward, review is limited to instances where the sentencing court either (1) categorically refuses to impose an exceptional sentence downward under any circumstances, i.e., states it will never impose a sentence below the standard range; (2) relies on an impermissible basis for refusing to impose an exceptional sentence below the standard range, such as the defendant's race, sex, religion, or some other characteristic, e.g., stating that no drug dealer should get an exceptional sentence downward; or (3) fails to recognize it has discretion to impose an exceptional sentence downward. *Id.* at 330; *In re Pers. Restraint of Mulholland*, 161 Wn.2d 322, 332-33, 166 P.3d 677 (2007). In these situations, a

7

sentencing court abuses its discretion, and a reviewing court will reverse. *State v. Grayson*, 154 Wn.2d 333, 342, 111 P.3d 1183 (2005).

As long as the sentencing court considered the facts and concluded that an exceptional sentence downward was factually or legally unsupportable, the defendant may not appeal its ruling. *Garcia-Martinez*, 88 Wn. App. at 330. For example, in *Cole*, the defendant unsuccessfully requested a below range sentence and then challenged the court's refusal to impose an exceptional sentence on appeal. *State v. Cole*, 117 Wn. App. 870, 880-81, 73 P.3d 411 (2003). The *Cole* court held the defendant could not appeal from a standard range sentence where the sentencing court considered the claimed mitigating factors, heard extensive argument on the subject, and then exercised its discretion by denying the request. *Id.* at 881. Similarly, in *Garcia-Martinez*, the court held a sentencing court that has considered the facts and concluded no basis exists for an exceptional sentence has exercised its discretion and the defendant may not appeal that ruling. *Garcia-Martinez*, 88 Wn. App. at 330.

RCW 9.94A.535 governs exceptional sentences. It provides that "[t]he court may impose an exceptional sentence below the standard range if it finds that mitigating circumstances are established by a preponderance of the evidence." RCW 9.94A.535(1).

The statute then lists 11 nonexhaustive examples of circumstances justifying exceptional sentences downward. RCW 9.94A.535(1)(a)-(k).

Here, Mr. Ramirez requested an exceptional sentence downward based on the mitigating circumstances of his young age and a lack of understanding of modern sexual mores. He argues the sentencing court did not consider either of these factors when it denied his request for an exceptional sentence. The record demonstrates otherwise.

The sentencing court considered Mr. Ramirez's age extensively. It repeatedly acknowledged Mr. Ramirez's young age, stated this factor made its decision more difficult, and noted that, based on brain science, young people are still developing and less able to make appropriate judgments.

The sentencing court also considered Mr. Ramirez's argument that he did not understand modern social mores relating to sexuality. The court noted these mores did not exist in prior generations, and stated they may put more strain on a young person's ability to be appropriate, exercise the right judgment, and not cross the line.

However, the sentencing court concluded these two factors were unpersuasive, given that Mr. Ramirez was raised in a household with appropriate social mores, boundaries, and parenting, had normal emotional and mental abilities, had attended school, had interacted socially, had interacted with H.S. socially before, and had

9

understood and honored H.S.'s refusals of consent in the past.[2] In light of this reasoning, it is clear the court considered the two mitigating factors Mr. Ramirez presented—the court simply did not find them persuasive.

Mr. Ramirez also contends the sentencing court categorically denied his request for an exceptional sentence downward. He relies on the court's remark stating that "regardless of social mores and regardless of youth, regardless of impulsivity or lack of brain development, there is consent. That is the ultimate line." 2 RP at 304. Mr. Ramirez contends this remark indicates that the court categorically refused to give an exceptional sentence downward to any defendant convicted of rape, "regardless" of what mitigating factors may be present.

However, in context, this remark simply indicated that the court did not believe these two particular factors—young adult age and claimed lack of appreciation for modern sexual mores—sufficiently diminish a person's culpability for having sexual intercourse without the other person's consent. This was not a categorical refusal to

---

[2] Mr. Ramirez argues the court erred when it reasoned his age was inherently considered as part of his standard sentencing range. Although Mr. Ramirez is correct the guidelines do not account for the defendant's age, *see* RCW 9.94A.510, the record makes clear the sentencing court did not deny Mr. Ramirez's request for an exceptional sentence based on a belief that his age was inherent in the standard range. Rather, the court denied his request for the above reasons.

consider an exceptional sentence for *any* individual convicted of rape, regardless of the circumstances.

The record demonstrates that the sentencing court considered Mr. Ramirez's request, heard extensive argument on the subject, and then provided a reasoned explanation for why an exceptional sentence downward was factually and legally unsupportable. The sentencing court acted within its discretion, and accordingly, Mr. Ramirez may not appeal his standard range sentence.

B. DEFENSE'S QUESTION ASKING VICTIM WHETHER SHE HAD KISSED HER ROOMMATE

Mr. Ramirez argues, for the first time on appeal, that the trial court abused its discretion when it prohibited him from cross-examining H.S. about whether she had ever kissed her roommate. Mr. Ramirez acknowledges Washington's rape shield statute generally bars evidence of the victim's past sexual behavior. However, he contends the questioning was proper because the State presented evidence about H.S.'s past sexual behavior in its case in chief.

Washington's rape shield statute provides that evidence of the victim's past sexual behavior is inadmissible on the issue of credibility and is generally inadmissible to prove the victim's consent. RCW 9A.44.020(2). Evidence of the victim's past sexual behavior

11

may be admissible to prove consent if specific procedural requirements are met. RCW 9A.44.020(3).

However, when the State opens the door in its case in chief by presenting evidence tending to prove the nature of the victim's past sexual behavior, the defense may cross-examine the victim on the subject. RCW 9A.44.020(4). The trial court nevertheless may require a hearing to determine if the cross-examination will elicit evidence that is relevant, not unduly prejudicial, and helpful in achieving substantial justice for the defendant. RCW 9A.44.020(3)(d), (4). Decisions on the admissibility of prior sexual behavior evidence under the statute are reviewed for an abuse of discretion. *State v. Hudlow*, 99 Wn.2d 1, 22, 659 P.2d 514 (1983).

Here, on direct examination, the State asked H.S. if she had any reason to hide a consensual sexual relationship with Mr. Ramirez from anyone else who was interested in her. H.S. testified she did not. On cross-examination, defense counsel asked H.S. if she had a romantic relationship with her roommate or if she had ever kissed her roommate. The State objected and the trial court sustained the State's objection. Defense counsel did not contest the court's ruling, and then asked H.S. whether she was in a romantic or sexual relationship with anyone around February 1. H.S. said she was not. Defense counsel then moved to another subject.

12

When a trial court excludes evidence, the proponent of that evidence must make an offer of proof to preserve the issue for appellate review. *See* ER 103(a)(2); *Seattle-First Nat'l Bank v. W. Coast Rubber, Inc.*, 41 Wn. App. 604, 609, 705 P.2d 800 (1985). The purpose of this rule is to inform the court of the legal theory under which the offered evidence is admissible, inform the court of the specific nature of the offered evidence so the court can assess its admissibility, and create an adequate record for review. *State v. Ray*, 116 Wn.2d 531, 538, 806 P.2d 1220 (1991).

Here, because Mr. Ramirez did not make an offer of proof as required by ER 103(a)(2), it is unclear whether the trial court excluded the evidence under the rape shield statute or on some other evidentiary basis, such as relevancy or undue prejudice. Mr. Ramirez argues the evidence was admissible under RCW 9A.44.020(4) because the State presented evidence in its case in chief about the nature of H.S.'s past sexual behavior. He further argues the evidence was relevant to prove whether another romantic interest prompted H.S. "to be dishonest about a consensual relationship with Mr. Ramirez." Br. of Appellant at 19. However, because he never made an offer of proof, the trial court was unable to consider whether the State opened the door in its case in chief or whether the question was relevant to the issue of consent. This also deprived the trial court of an opportunity to determine whether the issue required a hearing under RCW 9A.44.020(4).

13

Mr. Ramirez attempts to excuse his failure to make an offer of proof by claiming the trial court "did not give the defense an opportunity to make an offer of proof." Br. of Appellant at 20. However, the record indicates the defense never *attempted* to make an offer of proof. Had the defense attempted to make an offer of proof and had the trial court refused to consider it, Mr. Ramirez might have a valid excuse.

Mr. Ramirez also vaguely asserts the trial court's evidentiary ruling denied him his right under the Sixth Amendment to the United States Constitution to cross-examine adverse witnesses. Mr. Ramirez did not raise this issue at trial. Under RAP 2.5(a)(3), a defendant may raise an issue for the first time on appeal if it is a "manifest error affecting a constitutional right." However, because Mr. Ramirez never made an offer of proof, "the facts necessary to adjudicate the claimed error are not in the record on appeal" and, therefore, he cannot show the alleged error was manifest or obvious under RAP 2.5(a)(3). *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995).

C.    SUFFICIENCY OF THE EVIDENCE

Mr. Ramirez argues that insufficient evidence supports his conviction for second degree rape. He contends the State failed to prove H.S. was mentally incapacitated or physically helpless because her testimony did not establish she was asleep beyond a reasonable doubt.

14

In a criminal case, evidence is sufficient to convict if it permits a rational trier of fact to find the essential elements of the crime proved beyond a reasonable doubt. *State v. Munoz-Rivera*, 190 Wn. App. 870, 882, 361 P.3d 182 (2015). When a defendant challenges the sufficiency of the evidence, the proper inquiry is "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *Id.* Furthermore, "[a] claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Id.*

It is not this court's role to reweigh the evidence and substitute its judgment for that of the jury. *State v. McCreven*, 170 Wn. App. 444, 477, 284 P.3d 793 (2012). Instead, because the jurors observed the witnesses testify firsthand, this court defers to the jury's resolution of conflicting testimony, its evaluation of witness credibility, and its decision regarding the persuasiveness and the appropriate weight to be given the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

A person commits the crime of second degree rape when he or she engages in sexual intercourse with another person when the other person is incapable of consent by

15

reason of being physically helpless or mentally incapacitated. RCW 9A.44.050(1), (b).

"Sexual intercourse" includes digital penetration. *State v. Tili*, 139 Wn.2d 107, 111 n.3,

985 P.2d 365 (1999). "'Physically helpless' means a person who is unconscious or for

any other reason is physically unable to communicate unwillingness to an act." RCW

9A.44.010(5). "'[T]he state of sleep appears to be universally understood as

unconsciousness or physical inability to communicate unwillingness.'" *State v.*

*Mohamed*, 175 Wn. App. 45, 58-59, 301 P.3d 504 (2013) (quoting *State v. Puapuaga*, 54

Wn. App. 857, 861, 776 P.2d 170 (1989)). Thus, a person who is asleep is "physically

helpless" within the meaning of RCW 9A.44.010(5). *Id.* at 60.

Here, sufficient evidence supports the jury's finding that H.S. was asleep when Mr.

Ramirez committed sexual assault. H.S. testified that when she woke up, she had been

digitally penetrated. She testified that she did not think she felt the initial act of

penetration. She then testified that when she first realized she was awake, penetration

had already occurred.

Mr. Ramirez emphasizes the portion of H.S.'s testimony where she stated she did

not "think" she felt Mr. Ramirez initiate digital penetration. RP (Dec. 15, 2015) at 47.

Mr. Ramirez argues this statement contradicted her other testimony that she was asleep,

thus creating reasonable doubt. But H.S.'s statements are not inconsistent with one

16

another. Even if they were, H.S. unequivocally testified she woke up to Mr. Ramirez's digital penetration. This court defers to the jury's resolution of conflicting testimony.[3] *See Thomas*, 150 Wn.2d at 874-75.

This evidence was sufficient to permit a rational jury to find, beyond a reasonable doubt, that H.S. was asleep when Mr. Ramirez digitally penetrated her and, therefore, find that she was physically helpless. We conclude sufficient evidence supports Mr. Ramirez's conviction for second degree rape.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, A.C.J.

WE CONCUR:

Siddoway, J.

Pennell, J.

---

[3] Mr. Ramirez also argues that he had a prior relationship with H.S., that he had romantic feelings for her, that H.S. knew about his feelings, and that H.S. "apparently was confused about [her] own feelings." Br. of Appellant at 26. None of these arguments cast doubt on the evidence supporting any of the elements of second degree rape.