# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Dependency of I.H., | ) ) ) | No. 72693-5-I |
| STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, | ) ) ) ) | DIVISION ONE UNPUBLISHED OPINION |
| Respondent, | ) ) | |
| v. | ) ) ) | |
| DOTTY MARIE REED, | ) ) | |
| Appellant. | ) ) ) | FILED: August 3, 2015 |

APPELWICK, J. — A parent's consent to the termination of their parental rights and the adoption of their child may be revoked for fraud or duress within one year, but is irrevocable thereafter. In this case, nearly three years passed before Reed moved to vacate her consent to termination of her parental rights and the adoption of her son, I.H. The superior court denied the motion on several grounds, including untimeliness. We affirm.

## FACTS

Dotty Reed and Anthony Hine are the biological parents of I.H. In 2008, shortly after I.H. was born, the State charged Hine with assaulting Reed with sexual motivation. He subsequently pleaded guilty to the charge.

In 2010, police arrested Reed for shaking a baby in her day care and causing it brain damage. Shortly thereafter, the Department of Social and Health Services (Department) removed I.H. from the family home and placed him with his maternal grandmother.

On June 23, 2010, the court declared I.H. dependent and ordered Reed to complete anger management classes, parenting classes, and a psychological evaluation.

On April 22, 2011, the Department petitioned to terminate Reed's and Hines's parental rights to I.H.

In August 2011, the court terminated Hine's parental rights and Reed voluntarily signed a document entitled "Relinquishment of Custody [and] Consent to Termination/Adoption." The document provided, in part:

> 3. I realize that it is not in the best interest of [I.H.] to reside with me, and I confirm that *I desire to and hereby consent to relinquish custody of the child to the Washington State Department of Social and Health Services,* and hereby authorize the Department of Social and Health Services to have custody of the child and to have the power and authority to authorize and provide all necessary care for said child, which shall include but not be limited to. . . *placement of the child with prospective adoptive parents and the right to consent to the adoption of the child.*
>
> 4. *I hereby consent to termination of my parental rights* and request the Court to enter an order permanently terminating all of my parental rights to the child. *I further consent to the child's adoption and also*

> *authorize the Department of Social and Health Services to consent, on my behalf, to the child's adoption.*
>
> 10. . . . *Under no circumstances can I revoke this consent later than one year after it is approved by the Court*
>
> 13. . . . The foregoing consent has been given freely, voluntarily and with full knowledge of the consequences, and the consent is not the result of fraud or duress nor am I acting under the influence of anyone.

(Emphasis added.)

Reed and I.H.'s grandmother also signed an open adoption agreement. The grandmother signed as the "Adoptive Parent." The agreement addressed potential changes in the adoptive parents, stating: "Should there be a change in adoptive parents this agreement shall not be binding on future adoptive parents."

Based on Reed's consent to termination and adoption, the court entered an order terminating her parental rights. The order granted the Department legal custody of I.H. "with the right to place such child in a prospective adoptive home; the power to consent to the adoption of said child; and the power to place said child in temporary care . . . until the adoption is finalized."

On January 6, 2012, Reed pleaded guilty to assault of a child in the first degree and was sentenced to 123 months in prison. She has an earned early release date of August 9, 2019.

On June 26, 2012, the Department received a referral from Child Protective Services alleging that I.H.'s grandmother was neglecting him.

On July 18, 2012, the Department received the results of a psychological evaluation of the grandmother. The psychologist determined that she could not provide adequate supervision for I.H. and suffered from "untreated mental health issues." A subsequent home study identified a number of concerns with the grandmother's ability to care for I.H. The study author stated that "[d]ue to the ongoing lack of supervision of

3

[I.H.] by [the grandmother], it is recommended that he be placed in a home where his safety can be monitored and his needs met."

On February 6, 2013, the court authorized the Department to move I.H. from his grandmother's home to a "pre-adopt" home.

On March 14, 2014, I.H. was adopted by his new family. A few days later, his dependency action was dismissed.

On June 6, 2014, Reed, appearing pro se, moved to vacate her consent to termination and adoption under CR 60(b). She alleged the Department fraudulently obtained her consent by falsely telling her that I.H. would be adopted by his grandmother. In a supporting declaration, she alleged that an unnamed caseworker said her grandmother "would be able to adopt my son if I was to sign the 'Relinquishment of Custody' papers." She claimed she was told she had only two options: "[g]o to the termination hearing and lose, or sign my rights over in favor of an open adoption by my mother."

The Department submitted a declaration from Sharol Donoso, the social worker assigned to Reed when she executed her consent to termination and adoption. Donoso stated that while everyone had hoped I.H.'s grandmother would adopt him, no promises were made to Reed in that regard.

At the hearing on her motion, Reed told the court she "was under the assumption that the open adoption would go through with [I.H.'s grandmother]" and "never would have signed anything" had she known that would not happen. Counsel for the court appointed special advocate argued that

> . . . the biggest issue is the timing. You know . . . the open adoption agreement is three-and-a-half years ago. . . .

And when you're looking at this kind of passage of time, you have to look at the child's best interest. And this is a child that's now integrated into a permanent home. To upset him because the mother waited so long is not fair to this child.

Counsel for the Department echoed this argument and also addressed Reed's allegations of fraud:

Fraud simply hasn't been established. Ms. Reed did not name who supposedly guaranteed an adoption by her mother, the grandmother.

The credible evidence before the Court is the declaration from Ms. Donoso, the assigned social worker at the time, who said she does not make such guarantees. That would be a huge mistake to make to any family in these cases, and she did not do that in this case. There is no evidence contradicting that. To not be -- even to name the person who supposedly made the claimed guarantee in the face of the contravening evidence, that fails.

Reed responded in pertinent part:

. . . it was my understanding that this was the paper stating that my mother was going to adopt my son. She signed it over the line stating adoptive parent. It was signed by Sharol Donoso, the assistant attorney general and the commissioner. And . . . they have gone back on this. And they state that this isn't anything solid, yet it's here in paper.

. . . And then . . . just days after a year [from the date] my rights were terminated, they changed it. And that shows to me that there was always an ulterior motive to this.

. . . .

When they decided to take [I.H.] out of my mother's care, they never tried to find any other options to place him with family or family friends like they were supposed to.

. . . .

He has only been adopted for less than a year. That should not even be compared to the five years that he spent at home, within his home, within his family. One year is not something that will be detrimental to his health for the rest of his life. But being away from his biological family, wondering why his family didn't want him, why they didn't fight for him, why he can't see them, wondering, "Do they love me?" That will stay with him for the rest of his life.

5

The court commissioner denied the motion to vacate, concluding it was untimely and that Reed had not established fraud, misrepresentation or misconduct by the Department. Reed appeals.

## DISCUSSION

The sole issue on appeal is whether the superior court erred in denying Reed's motion to vacate her consent to termination and adoption. We review the denial of a motion to vacate under CR 60(b) for manifest abuse of discretion. In re Det. of Mitchell, 160 Wn. App. 669, 675, 249 P.3d 662 (2011) (court rules); Dep't of Ecology v. Campbel & Gwinn, LLC, 146 Wn.2d 1, 9, 43 P.2d 4 (2002) (statutes). We review a court's interpretation of statutes and court rules de novo. Buckner, Inc. v. Berkey Irrigation Supply, 89 Wn.App. 906, 911, 951 P.2d 338 (1998).

Reed contends the superior court erred in concluding that her motion to vacate was untimely. She argues that the motion had to be filed within only a "reasonable time" under CR 60(b), and that she met that requirement by filing her motion as soon as she learned of I.H.'s adoption by someone other than his grandmother. We disagree.

The document establishing Reed's consent expressly states that "*[u]nder no circumstances* can I revoke this consent later than one year after it is approved by the Court." (Emphasis added.) This language echoes RCW 26.33.160(3), which states in pertinent part:

> [A] consent to adoption may not be revoked after it has been approved by the court. *Within one year after approval, a consent may be revoked for fraud or duress practiced by the person, department, or agency requesting the consent,* or for lack of mental competency on the part of the person giving the consent at the time the consent was given. *A written consent to adoption may not be revoked more than one year after it is approved by the court.*

6

(Emphasis added.) This strict time limit "reflects a public policy favoring finality in relinquishment proceedings." In re Dependency of M.S., 156 Wn. App. 907, 914-15, 236 P.3d 214 (2010); In the Matter of A.S., 65 Wn. App. 631, 640, 829 P.2d 791 (1992) (noting that the "relinquishment and adoption statutes are intended to protect the best interests of the child, to achieve finality in the placement of children, and protect new family relationships from disturbance by natural parents."). This public policy, and the statutory time limit implementing it, would be undermined if parents seeking to revoke their consent could invoke the more generous time limits of CR 60(b). As we noted in In re Marriage of Furrow, 115 Wn. App. 661, 675, 63 P.3d 821 (2003),

> consent is not revocable for any reason more than one year after it has been approved by the court. RCW 26.33.160(4)(g). *Permitting parents to challenge voluntary relinquishment and termination orders at any time pursuant to CR 60(b) would fly in the face of the revocation provisions of the adoption code, would invite uncertainty and delay that would discourage the emotional and financial commitment that prospective adoptive parents must make, and would result in significant harm to children who have become integrated into adoptive homes.*

(Emphasis added.)[1]

It is undisputed that Reed did not file her motion to vacate until nearly three years after she consented to termination and adoption. The motion is therefore barred by

---

[1] As Judge Anne Ellington, retired, so ably noted,

> . . . the purpose of the adoption statutes is to provide for the best interests of the child. This requires finality in the adoption process. If the discovery rule applied, such finality could never be achieved. An allegation of recently discovered fraud could be brought at any time until the child became an adult. Given the emotional cauldron of post-relinquishment regret, such allegations would likely be frequent. The legislature has made the policy choice in favor of finality. It is not for the court to substitute its judgment for that of the legislature.

7

both the language in Reed's written consent and the time limit in RCW 26.33.160(3). Reed's claim that the motion was timely under CR 60(b) ignores the one year time limits in the consent document and RCW 26.33.160(3). It also ignores our reasoning in Furrow. Reed offers no analysis or authority supporting her implicit assertion that the time limit in CR 60(b) is controlling. The superior court did not err in concluding the motion to vacate was untimely.

In light of the foregoing, we do not address Reed's challenge to the court's conclusion that she failed to demonstrate fraud or any basis under CR 60(b) for vacating her consent. We note, however, that our review of the record disclosed little if any support for Reed's allegations of fraud, misrepresentation, or misconduct on the part of the Department.

Affirmed.

WE CONCUR:

Appelwick, J.

Trickey, J.

8