IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| B & B WELDING, INC., | No. 86240-5-I |
| Appellant, | |
| v. | |
| SCARSELLA BROS., INC.; and SB STRUCTURES, LLC, | UNPUBLISHED OPINION |
| Respondents, | |
| LIBERTY MUTUAL INSURANCE COMPANY; and CITY OF TUKWILA, | |
| Defendants. | |

BOWMAN, A.C.J. — In 2016, Scarsella Bros., Inc. and SB Structures, LLC (collectively Scarsella) executed a material purchase agreement (MPA) with B & B Welding, Inc. (B&B) to furnish the materials needed to construct a bridge in Tukwila. When B&B delivered the bridge pieces, they did not fit together. As a result, Scarsella refused to pay. B&B corrected the issues but refused delivery until Scarsella paid additional costs. After the parties entered a settlement agreement, B&B delivered properly fitting bridge pieces. B&B then sued Scarsella for breaches of the MPA and the settlement agreement. Scarsella counterclaimed, alleging B&B materially breached the MPA. Following a bench trial, the court entered findings of facts and conclusions of law determining that B&B breached the MPA, and it offset Scarsella's damages by the unpaid contract

balance. B&B appeals, arguing several findings are unsupported by substantial evidence and challenging the court's conclusions. B&B also argues the court erred by refusing to award it prejudgment interest on Scarsella's unpaid contract balance and by awarding Scarsella attorney fees and costs under the settlement agreement. Finding no error, we affirm. And we deny both parties' requests for attorney fees and costs on appeal.

FACTS

In April 2016, the city of Tukwila contracted with Scarsella to construct the "Tukwila Urban Center Pedestrian/Bicycle Bridge." In June 2016, Scarsella and B&B executed an MPA under which B&B agreed to provide the materials needed to construct the bridge. B&B agreed that "[a]ll materials furnished under this agreement shall be satisfactory to [Scarsella] and shall conform strictly with the drawings and specifications and all modifications thereof on file." And that B&B would preassemble the bridge using a method provided in section 6-03.3(28) of the Washington State Department of Transportation's 2016 "Standard Specifications for Road, Bridge, and Municipal Construction" (WSDOT Specifications).[1] The total contract amount was $883,575.

Scarsella contracted with Adams & Smith, Inc. to erect the bridge. In April 2017, B&B delivered the pieces to Scarsella at the bridge assembly site. During assembly, parts of the bridge's top chord did not align and the bridge erectors could not fit the pieces together. Scarsella returned the bridge pieces to B&B's

---

[1] The MPA does not include explicit language requiring that B&B comply with the WSDOT Specifications. But several witnesses testified, and the trial court found, that B&B agreed to comply with the specifications in its bid for the job.

shop for modifications and refused B&B further payment. B&B modified the pieces, preassembled the bridge, and then disassembled it but refused to deliver the modified parts until Scarsella paid additional erection costs.

On June 6, 2017, Scarsella and B&B entered a settlement agreement. The parties agreed that in exchange for B&B's "immediate delivery" of the bridge, Scarsella would pay B&B $139,454 in "additional erection costs." But Scarsella reserved the right to

> dispute B&B's right to the Additional Erection Costs if [Scarsella] proves that B&B did not comply with the [MPA]'s requirements for bridge assembly prior to the first delivery of the bridge. The prevailing party in such a dispute shall be entitled to its attorneys' fees and costs.

After executing the settlement agreement, B&B delivered the parts, and Adams & Smith erected the bridge. Still, Scarsella did not pay B&B the remaining $169,190 it owed under the MPA.

In October 2019, B&B sued Scarsella, Liberty Mutual Insurance Company, and the city of Tukwila for breach of a public works contract and bond obligation, breach of the settlement agreement, insurer bad faith, and unjust enrichment.[2] B&B asked for judgments against Scarsella and Liberty Mutual jointly and severally for contract amounts owed to B&B.[3] Scarsella counterclaimed, alleging B&B materially breached its obligations under the MPA by delivering defective bridge parts. It asked for $565,261.90 in damages and an award of attorney fees and costs.

---

[2] In July 2020, the parties stipulated and the trial court ordered that the City of Tukwila be dismissed without prejudice.

[3] Liberty Mutual is not a party on appeal.

In February 2021, B&B moved for partial summary judgment as to its liability for any problems with the bridge's assembly. B&B argued it complied with its obligations under the MPA, which allocated any risk of assembly "issues" to Scarsella. The court denied B&B's motion. In August 2022, Scarsella moved for summary judgment on all of B&B's claims, arguing it did not comply with the notice and claims provisions under the WSDOT Specifications. The trial court denied Scarsella's motion.

In November 2023, the case proceeded to bench trial. Both parties called expert witnesses to testify about B&B's preassembly of the bridge and its compliance with the WSDOT Specifications. In December 2023, the trial court issued findings of fact and conclusions of law. The court found that the MPA required B&B to (1) complete a preassembly of the bridge using one of the WSDOT Specifications before delivering the pieces to Scarsella and (2) "furnish bridge pieces that fit together at the time of delivery to Scarsella." And it found B&B breached the MPA. The court further found that Scarsella did not owe B&B additional erection costs under the settlement agreement because B&B did not complete a preassembly using one of the WSDOT Specifications methods. It then determined that Scarsella adequately mitigated its damages and awarded it $340,875.91. But the court also concluded B&B eventually performed its obligations under the MPA, entitling it to the full contract amount. The court offset Scarsella's award by the remaining $169,190.00 due under the MPA and issued a $171,685.91 judgment for Scarsella.

Scarsella then moved for attorney fees, costs, and prejudgment interest. B&B also moved for prejudgment interest and for the court to reconsider and amend its findings to include an express finding about B&B's affirmative defense of waiver and estoppel. B&B also moved to vacate the judgment under CR 52(d) for failure "to include formal findings of fact as to the dispositive issues litigated."

The court held a hearing and entered an order on the post-trial motions. It denied both parties' motions for prejudgment interest. And it denied without prejudice Scarsella's motion for attorney fees and costs, informing Scarsella it "must seek to segregate those fees and costs due under the Settlement Agreement from those that are not." Finally, the court granted B&B's motion for reconsideration only to clarify that Scarsella never waived the right to have B&B preassemble the bridge using one of the WSDOT Specification methods and otherwise denied the motion.

In March 2024, Scarsella again moved for attorney fees and costs, arguing it segregated out those fees unrelated to B&B's failure to comply with its preassembly obligations. The trial court awarded Scarsella $468,695 in attorney fees and $38,075 in costs.

B&B appeals.

ANALYSIS

B&B argues the trial court erred by (1) determining it breached the MPA, (2) finding Scarsella did not waive its right to challenge B&B's preassembly of the bridge, and (3) finding Scarsella mitigated its damages. B&B also argues the court erred by (4) refusing to award B&B prejudgment interest and (5) awarding

5

Scarsella attorney fees and costs under the settlement agreement. Both parties seek attorney fees and costs on appeal. We address each argument in turn.

1. Challenged Findings of Fact and Conclusions of Law

B&B argues the trial court made several unsupported findings of fact and erroneous conclusions of law.

When, as here, the trial court has weighed the evidence, we review only whether substantial evidence supports the trial court's findings of fact and whether those findings support its conclusions of law. *Frank Coluccio Constr. Co. v. King County*, 136 Wn. App. 751, 761, 150 P.3d 1147 (2007). Substantial evidence is "evidence sufficient to persuade a fair-minded person of the truth of the declared premise." *Id.* The party challenging a finding of fact has the burden to show it is unsupported by the record. *Panorama Vill. Homeowners Ass'n v. Golden Rule Roofing, Inc.*, 102 Wn. App. 422, 425, 10 P.3d 417 (2000). We defer to the trial court on issues of conflicting evidence, witness credibility, and persuasiveness of the evidence. *Scott's Excavating Vancouver, LLC v. Winlock Props., LLC*, 176 Wn. App. 335, 342, 308 P.3d 791 (2013).

A. B&B's Breach of the MPA

B&B challenges the trial court's determination that it breached the MPA. It argues substantial evidence does not support the court's finding that it failed to perform a progressive chord assembly or that it failed to deliver pieces that fit together. And that in any event, Scarsella waived its right to challenge B&B's preassembly method. We disagree.

6

As discussed above, the parties agreed that B&B would complete a preassembly of the bridge using a method provided in section 6-03.3(28) of the WSDOT Specifications before delivering the bridge pieces to Scarsella. Under section 6-03.3(28)A(4), a "progressive chord assembly" requires that "[a]djacent chord sections are assembled in the same way as specified for Full Chord Assembly, using the procedure specified for Progressive Truss or Girder Assembly."

B&B argues the trial court erred by finding that it failed to perform a progressive chord assembly. But at trial, Scarsella's expert, bridge engineer Patrick Montemerlo, opined that B&B did not perform a progressive chord assembly. He testified there was no evidence B&B preassembled the connection between the TYK joint[4] and the adjacent top chord member, which the specifications required. B&B contends it was not required to fit the TYK stub to the adjacent top-chord piece to perform a progressive chord assembly.[5] While some testimony supports that position, we defer to the trial court on conflicting evidence and witness credibility. *Scott's Excavating*, 176 Wn. App. at 342. Substantial evidence supports the court's finding that B&B failed to perform a progressive chord assembly.

---

[4] A TYK joint connects a top and bottom chord.

[5] Specifically, B&B argues that the top chord does not include the TYK joint, so B&B was not required to fit-up the TYK joint during preassembly. But Montemerlo testified that "even if you wanted to say [the TYK joint is] not part of the top chord, . . . the plans are explicitly calling that portion as the top chord. And then also in the progressive chord assembly [specification], it required that that be connected all the way to the joint."

7

Even so, B&B argues Scarsella waived its right to challenge B&B's bridge assembly method.[6]  "A waiver is the intentional voluntary relinquishment of a known right."  *Jones v. Best*, 134 Wn.2d 232, 241, 950 P.2d 1 (1998).  Waiver may result from an express agreement or be inferred from circumstances indicating a party's intent to waive.  *Id.*  But it cannot be inferred from doubtful or ambiguous factors.  *Id.*  The party claiming waiver has the burden to prove intentional relinquishment of the right.  *Id.* at 241-42.

B&B claims Scarsella waived the right to a progressive chord preassembly by refusing to choose a shop assembly method, failing to object to B&B's chosen shop assembly method, not commenting on B&B's method during its inspections at B&B's shop, and not taking action after learning that B&B "did not scan the connection between the TYK joint and the top chord."  But B&B fails to show how these passive actions amount to Scarsella intentionally and voluntarily relinquishing its right to have B&B conduct a proper preassembly and deliver parts that fit.

B&B suggests Scarsella "*knew*" B&B would not fit the top chord and TYK joint together and did not object.  But there was competing testimony about what Scarsella knew.  For example, Scarsella's field engineer and project manager, Miguel Garcia, testified that B&B never informed him it would not fit the TYK piece with the adjacent top chord piece.  And John Smith, Scarsella's general

---

[6] B&B also argues in passing that Scarsella is "estopped . . . from asserting damages as a result B&B's chosen [preassembly] method."  Because "[p]assing treatment of an issue or lack of a reasoned argument does not provide a sufficient basis for review," we do not address the argument.  *Stiles v. Kearney*, 168 Wn. App. 250, 266, 277 P.3d 9 (2012).

superintendent and project manager, testified Scarsella was not "concerned" about B&B's preassembly because it thought B&B intended to connect the TYK pieces with the adjacent chords. So, evidence supports finding that Scarsella was unaware of any assembly issues before B&B delivered the bridge pieces. And substantial evidence supports the trial court's determination that Scarsella "did not intentionally or voluntarily relinquish its contractual right to have B&B complete a pre-assembly using one of the methods in section 6-03.3(28) of the WSDOT Specifications."

B&B also argues substantial evidence does not support the trial court's finding that B&B failed to "furnish bridge pieces that fit together at the time of delivery" in April 2017. B&B insists that "the fit[-]up failure resulted exclusively from [the] erection aids," not B&B's defective manufacturing. But Justin Page, a partner at Adams & Smith, testified that during the first attempt to erect the bridge, the erection aids were in the correct position. He testified that adjusting the erection aids would not have solved the problem because the "TYK was not in the position that it was supposed to be." And that the problem was not a "minor misfit."

Substantial evidence supports the court's findings and conclusion that B&B breached the MPA by delivering bridge pieces that did not fit together.[7]

---

[7] B&B also argues the trial court erred by concluding it breached the MPA without specifying the precise reason the bridge pieces did not fit. But the MPA required B&B to deliver bridge pieces that fit together, and B&B failed to do so. In any event, Page testified that after the fit-up failure, it was "obvious" B&B "used heat and grinding to . . . modify the TYK piece and the adjacent top chord member" at its shop. After B&B's modifications, the pieces fit.

B. Mitigation of Damages

B&B argues the trial court erred by finding that Scarsella adequately mitigated its damages. We disagree.

"The doctrine of mitigation of damages prevents an injured party from recovering damages that could have been avoided through reasonable efforts." *Scott's Excavating*, 176 Wn. App. at 346-47. Generally, a nonbreaching party must use reasonable means to avoid or minimize damages. *Jet Boats, Inc. v. Puget Sound Nat'l Bank*, 44 Wn. App. 32, 43, 721 P.2d 18 (1986). The mitigation efforts must appear reasonable and timely under the circumstances. *Scott's Excavating*, 176 Wn. App. at 347. And if " 'a choice of two reasonable courses presents itself, the person whose wrong forced the choice cannot complain that one rather than the other is chosen.' " *Labriola v. Pollard Grp., Inc.*, 152 Wn.2d 828, 840, 100 P.3d 791 (2004) (quoting *Hogland v. Klein*, 49 Wn.2d 216, 221, 298 P.2d 1099 (1956)). The party alleging a failure to mitigate has the burden of proving the allegation. *Jet Boats*, 44 Wn. App. at 43.

Here, the trial court found the "evidence does not show that Scarsella failed to use reasonable efforts to minimize the loss it suffered." B&B argues that this finding is unsupported because Scarsella had several reasonable means available to avoid damages and took none. Specifically, it asserts Scarsella failed to mitigate its damages by not (1) choosing a different shop assembly method, (2) asking B&B to test the connection between the TYK joint and the top chord, (3) objecting to B&B's work after visiting its shop for inspections, or (4) allowing B&B to fix the bridge pieces in the field.

10

Of these options, the first three are actions B&B asserts Scarsella should have made before B&B breached the MPA. But the doctrine of mitigation considers a party's efforts made after the other party breaches. *See Jet Boats*, 44 Wn. App. at 43 (explaining the duty to mitigate damages applies to "the victim of a breach of contract"). Because B&B's first three arguments do not amount to mitigation efforts, the trial court did not err by refusing to find they were evidence that Scarsella failed to mitigate its damages.

As for B&B's last argument, it contends Scarsella "could have let B&B fix the erection aids in the field in just a few days and resolve the issues expeditiously." But there was trial testimony showing that B&B could not have fixed the problem in the field. Page testified that he "tried everything" but could not make the required adjustments in the "field environment." And that moving the erection aids would not have solved the problem. Garcia said the erectors "were pretty exhaustive with all their methods in the field of trying to fit these pieces together." Smith added that once Scarsella realized the "TYK stubs were installed incorrectly, we figured they'd have to go back, maybe get cut loose and rotated," which was "beyond the [erectors'] purview." This evidence supports the court's findings that it was reasonable for Scarsella to return the bridge to B&B's shop to fix the issues.

The trial court's findings support its conclusion that Scarsella adequately mitigated its damages.

11

2. Prejudgment Interest

B&B argues the trial court abused its discretion by denying B&B prejudgment interest on Scarsella's payment due under the MPA. Scarsella argues the court properly denied prejudgment interest because Scarsella did not wrongfully withhold money from B&B, and the *Mall Tool*[8] exception applies. We agree with Scarsella.

The purpose of prejudgment interest is to compensate a party for "the 'use value' of damages incurred from the time of the loss until the date of judgment." *Humphrey Indus., Ltd. v. Clay St. Assocs., LLC*, 176 Wn.2d 662, 672, 295 P.3d 231 (2013). Generally, a party is entitled to prejudgment interest on liquidated claims to compensate them for loss of use on money that another party wrongfully withholds. *TJ Landco, LLC v. Harley C. Douglass, Inc.*, 186 Wn. App. 249, 256, 346 P.3d 777 (2015). We review a trial court's order on prejudgment interest for abuse of discretion. *Humphrey Indus.*, 176 Wn.2d at 672. A court abuses its discretion if its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons, including errors of law. *Id.*

Here, the trial court denied B&B's request for prejudgment interest on the $169,190 offset that Scarsella owed B&B. It concluded that based on the damages B&B caused Scarsella, "it was not wrongful for Scarsella to withhold money from B&B, and denial of prejudgment interest to B&B is just and equitable." It reasoned that

> B&B is entitled to an offset for money owed under the [MPA]. But Scarsella is owed more for damages also related to the [MPA].

---

[8] *Mall Tool Co. v. Far W. Equip. Co.*, 45 Wn.2d 158, 273 P.2d 652 (1954).

Scarsella's damages were caused by B&B at or near the time that B&B was owed money. Put another way, at the time that the $169,190 became due, B&B had already caused damages to Scarsella that exceeded $169,190. This is true even though the exact amount of Scarsella's damages was not fixed till trial.

Still, B&B asserts that Scarsella "wrongfully" withheld its final payment because B&B cured its breach by delivering bridge pieces that fit together. Pointing to *Mall Tool*, Scarsella argues it did not wrongfully withhold payment, and the trial court properly denied prejudgment interest based on an exception to the general rule awarding prejudgment interest on liquidated claims.

"Deducting unliquidated offsets from a liquidated claim prior to calculating prejudgment interest is normally improper." *Buckner, Inc. v. Berkley Irrig. Supply*, 89 Wn. App. 906, 917, 951 P.2d 338 (1998) (citing *Mall Tool*, 45 Wn.2d at 177). But an exception to the general prejudgment interest rule applies "when the defendant's counterclaim arises out of the same contract as the plaintiff's claim and is a result of defective workmanship or other defective performance by the plaintiff." *Id.* (citing *Mall Tool*, 45 Wn.2d at 177). Under those circumstances, the amount of a liquidated claim may be reduced by the amount of an unliquidated counterclaim, and interest is "payable on only the amount remaining after setoff." *Gemini Farms LLC v. Smith-Kem Ellensburg, Inc.*, 104 Wn. App. 267, 269, 16 P.3d 82 (2001); *see also Mall Tool*, 45 Wn.2d at 177. The supporting theory is that "the seller is only entitled to interest on funds it is wrongfully deprived of during the period of default." *Gemini Farms*, 104 Wn. App. at 269.

Here, Scarsella's unliquidated counterclaim arises out of the same contract as B&B's liquidated claim—the MPA. And Scarsella's counterclaim is

based on B&B's defective performance.  So, the *Mall Tool* exception applies, meaning the trial court could first reduce B&B's damages by Scarsella's damages and then order interest on the amount remaining after setoff.  But after the court's setoff, Scarsella did not owe B&B any payment, so there was no remaining amount on which the court could award prejudgment interest.

The trial court did not abuse its discretion by refusing to award B&B prejudgment interest.

3.  Attorney Fees and Costs Below

Finally, B&B argues the trial court abused its discretion by awarding Scarsella attorney fees and costs under the settlement agreement without properly segregating them.[9]  We disagree.

We review whether the trial court's fee award was reasonable for abuse of discretion.  *Ethridge v. Hwang*, 105 Wn. App. 447, 460, 20 P.3d 958 (2001).  A trial judge has broad discretion to determine the reasonableness of an award, and we will not reverse the award unless the trial court manifestly abused its discretion.  *Id.*  Still, "the record must show a tenable basis for the award." *Loeffelholz v. Citizens for Leaders with Ethics & Accountability*, 119 Wn. App. 665, 690, 82 P.3d 1199 (2004).

Here, the MPA contained no provision for attorney fees.  But the parties' settlement agreement includes an attorney fees and costs provision, providing

---

[9] B&B also argues the trial court erred by awarding attorney fees and costs because Scarsella did not substantially prevail under the settlement agreement.  In support of its argument, B&B asserts it complied with the MPA's bridge assembly requirements and Scarsella waived its right to challenge that.  Having already determined those arguments fail, we do not address them again here.

that

> [Scarsella] reserves the right to dispute B&B's right to the Additional Erection Costs if [Scarsella] proves that B&B did not comply with the [MPA]'s requirements for bridge assembly prior to the first delivery of the bridge. The prevailing party in such a dispute shall be entitled to its attorneys' fees and costs.

When a party is authorized to recover attorney fees for only some claims, the award must " 'reflect a segregation of the time spent on issues for which fees are authorized from time spent on other issues.' " *Loeffelholz*, 119 Wn. App. at 690 (quoting *Mayer v. City of Seattle*, 102 Wn. App. 66, 79-80, 10 P.3d 408 (2000)). This is required even if the claims overlap or are interrelated. *Id.* But if the trial court finds the claims are so related that no reasonable segregation is possible, it need not segregate attorney fees. *Id.* at 691*.*

Here, after ordering Scarsella to segregate its fees and costs due under the settlement agreement, the trial court awarded Scarsella $468,695 in attorney fees and $38,075 in costs. The court based its determination on its "extensive experience with [the] case." It found there were three categories of hours, fees, and costs that did not result from the covered dispute, which totaled 163.2 hours, $66,846 in fees, and $8,479 in costs. It also found expert witness Garcia's associated hours and fees could not "reasonably be segregated." It determined:

> Scarsella's attorneys and paralegals reasonably and appropriately spent 1,210.9 hours in, on, and as a result of the Covered Dispute. This sum comes from the total hours of 1,374.1, less the 163.2 noted above, for a total of 1,210.9. B&B does not challenge the hourly rates for this time. And based on the evidence presented and the Court's experience in the legal community, the hourly rates were and are reasonable . . . .

> The applicable hourly rates multiplied by the 1,210.9 hours noted above yields a lodestar[10] of $468,695.  This lodestar total is reasonable and appropriate . . . .
> . . . Scarsella seeks costs of $46,553.70.  As noted above, $8,478.67[.00] of these costs (for [a Scarsella expert witness]) were not costs in, on, or as a result of the Covered Dispute.  The remaining costs of $38,075.03 are costs in, on, and as a result of the Covered Dispute and are reasonable and appropriate.[11]

The court concluded that its findings "reflect a reasonable segregation of the hours, fees, and costs authorized under the Settlement Agreement from those not authorized under the Settlement Agreement" and that it could not further segregate them.

Still, B&B argues the trial court abused its discretion because its award "conflicts with any sense of equity."  B&B says Scarsella did not segregate its claims in its time record, and the court "effectively awarded 87.5 [percent] ($468,695 of $535,541) of Scarsella's attorney fees despite Scarsella only prevailing on one of the three matters."  But B&B fails to point to any attorney fees or costs that should have been segregated from the award.

Because the record shows the trial court had a tenable basis for its award and B&B does not show otherwise, we conclude the court did not abuse its discretion in awarding Scarsella attorney fees and costs under the settlement agreement.

---

[10] Under the lodestar method of calculating attorney fees, the trial court determines the number of hours an attorney reasonably expended on the litigation and multiplies them by a reasonable hourly rate.  *Ewing v. Glogowski*, 198 Wn. App. 515, 521, 394 P.3d 418 (2017).

[11] Footnotes omitted.

4.  Attorney Fees and Costs on Appeal

Scarsella and B&B both request attorney fees and costs on appeal. Under RAP 18.1(a) and (b), a party is entitled to recover reasonable attorney fees on appeal if (1) applicable law grants the party a right to recover fees or expenses and (2) the party devotes a section of its brief to the request.  *See Buchanan v. Buchanan*, 150 Wn. App. 730, 739, 207 P.3d 478 (2009) (denying a party's request for attorney fees because it failed to satisfy these requirements). Because both parties fail to cite an applicable law granting them the right to recovery and fail to devote a section of their briefs to the requests, we deny their requests.

In sum, we affirm the trial court's bench trial findings of fact and conclusions of law, its denial of B&B's request for prejudgment interest, and its award of attorney fees and costs to Scarsella under the settlement agreement. And we deny both parties' requests for fees and costs on appeal.

_____, ACJ

WE CONCUR:

_____        _____